UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA DE JESUS RIVERA RAMIREZ (A 221-421-676),<br><br>Petitioner,<br><br>v.<br><br>CHESTNUT,<br><br>Respondent. | No. 1:26-cv-03639-TLN-SCR<br><br><u>FINDINGS & RECOMMENDATIONS</u> |

Petitioner is a federal immigration detainee who filed this habeas corpus action pursuant to 28 U.S.C. § 2241. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. For the reasons provided below, the undersigned finds that Petitioner's ongoing detention violates her substantive due process rights and recommends that Petitioner be released from custody.

**I. Factual and Procedural History**

Petitioner is a 50-year-old citizen of Mexico. ECF No. 9-3 at 1. She is a widow and the sole provider for her two U.S.-citizen children who reside in the United States. ECF No. 14 at 1. While living in Mexico, Petitioner was kidnapped and received threats that her daughter would be kidnapped. ECF No. 14 at 12. Petitioner last entered the United States lawfully on a temporary visa on June 24, 2024. ECF No. 9-3 at 3. She remained in the United States beyond her authorized period of stay, which ended on July 28, 2024. <u>Id</u>. On October 28, 2025, U.S. Immigration and Customs Enforcement (ICE) officers arrested Petitioner, charged her

administratively under 8 U.S.C. 1227(a)(1)(B), and initiated removal proceedings against her. Id. Petitioner received a bond hearing on December 22, 2025, after which an Immigration Judge (IJ) ordered Petitioner's release on bond. ECF No. 9-1. Petitioner complied with all conditions of her release. ECF No. 14 at 10.

Upon discovery of a warrant for Petitioner's arrest in Mexico for the offence of "fraudulent administration" (ECF No. 9-4), ICE revoked Petitioner's bond. ECF 9 at 2, 3. At a bond redetermination hearing on February 5, 2026, an IJ denied bond, finding Petitioner "poses and extreme risk of flight." ECF No. 9-2. Petitioner reported to ICE for detention after the hearing as ordered and did not appeal the bond denial. ECF No. 9 at 1. On April 24, 2026, just days before her scheduled asylum hearing in Otay Mesa, ICE abruptly transferred Petitioner from the Otay Mesa detention center to the California City Immigration Processing Center. ECF No. 14 at 3. Petitioner's next immigration court hearing is scheduled for August 24, 2026. See EOIR Automated Case Information, available at https://acis.eoir.justice.gov/en/caseInformation.

Petitioner filed a petition for writ of habeas corpus on May 11, 2026, alleging that her detention violates her Fourth and Fifth Amendment rights. ECF No. 1. Respondent replied that Petitioner's detention is lawful per 8 U.S.C. § 1226(a) and (b), that the bond hearings provided due process, and that Petitioner has failed to exhaust her administrative remedies because she did not appeal the bond hearing order that resulted in her re-detention. ECF No. 9. After the appointment of counsel, Petitioner filed an amended petition, claiming both procedural and substantive due process violations. ECF No. 14. The amended petition highlighted Petitioner's claims of inadequate medical care and irreparable harm while detained.

Petitioner suffers chronic pain due to fibromyalgia, and painful bumps on her legs due to lichen planus. ECF No. 14 at 3, 4. These conditions require two daily medications and a special cream. Id. Petitioner states she "begged" for several days before finally receiving her fibromyalgia medication, which she does not receive consistently. Id. She has yet to receive medication for the lichen planus. Id. She alleges frigid conditions, inadequate food, water, and bathroom facilities, and claims she was injured during transport from one facility to another. ECF No. 1 at 9, 10. She also recounts an incident in which a fellow detainee died after being taken to

a medical facility without a doctor available. ECF No. 14 at 13. Meanwhile, her two children lack stable housing. Id. at 11. Respondent did not refute Petitioner's factual allegations but argued that claims regarding conditions of confinement are outside the scope of habeas relief. ECF No. 15.

## II. Legal Standards

The Due Process Clause "protects individuals against two types of government action: violations of substantive due process and procedural due process." United States v. Quintero, 995 F.3d 1044, 1051 (9th Cir. 2021) (internal quotation omitted). As a matter of substantive due process, governmental action may only infringe a fundamental right if "the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993).

An as-applied challenge "contends that the law is unconstitutional as applied to the litigant's particular [circumstances], even though the law may be capable of valid application to others." Foti v. City of Menlo Park, 146 F.3d 629, 635 (9th Cir. 1998) (citation omitted).

## III. Analysis

Petitioner argues that her detention violates due process because it is punitive and is not reasonably related to a legitimate government purpose. ECF No. 14 at 13. Respondents did not meaningfully address the substantive due process claim.

"At the least, due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." Jackson v. Indiana, 406 U.S. 715, 738 (1972). In the context of pretrial detention, the Ninth Circuit has held that "[a] [substantive] due process violation occurs when detention becomes punitive rather than regulatory, meaning there is no regulatory purpose that can rationally be assigned to the detention or the detention appears excessive in relation to its regulatory purpose." United States v. Torres, 995 F.3d 695, 708 (9th Cir. 2021) (citing United States v. Salerno, 481 U.S. 739, 747 (1987)). A judge within this Circuit analogized this framework to the immigration detention context as follows:

> As the Court in Zadvydas explained, "the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."

> 533 U.S. at 693, 121 S.Ct. 2491. Due process protects against immigration detention that is not reasonably related to the legitimate purpose of effectuating removal or protecting against danger and flight risk. See id. at 690-91, 121 S.Ct. 2491.

Padilla v. ICE, 704 F. Supp. 3d 1163, 1171-72 (W.D. Wash. 2023); see also Larios v. Wofford, No. 1:26-cv-1498 DJC CKD, 2026 WL 765019, at *5 (E.D. Cal. Mar. 18, 2026) (recognizing availability of substantive due process claims in the context of immigration detention).

Several judges, including judges of this Court, see Doe v. Chestnut, 810 F. Supp. 3d 1169 (E.D. Cal. 2025), have adopted the following five-factor balancing test developed by Judge Pitts of the Northern District of California: (1) the length of detention and whether it is excessive in relation to its regulatory purpose; (2) the government's contribution to any delay; (3) the evidence supporting the determination that detention is warranted to prevent flight risk or community danger; (4) whether the government interests in ensuring appearance at future proceedings and protecting the community could be protected through alternatives to detention that are less harsh; and (5) the conditions of detention and how they compare to conditions under which pretrial criminal detainees or people convicted of crimes are held. See Doe v. Becerra, 732 F. Supp. 3d 1071, 1080 (N.D. Cal. 2024) ("Doe v. Becerra II"). Applying these Doe v. Becerra II factors, the undersigned concludes that Petitioner's current detention violates substantive due process.

**i. Length of Detention**

"[A]t some point, [civil] detention can 'become excessively prolonged, and therefore punitive,' resulting in a due process violation." Torres, 995 F.3d at 708 (quoting Salerno, 481 U.S. at 747 n.4). "But while the existence of some threshold of per se due process violation may be 'undisputed,' . . . it has also never been clearly delineated in the context of immigration detention." Doe v. Becerra, 704 F. Supp. 3d 1006, 1020 (N.D. Cal. 2023) ("Doe v. Beccera I") (internal citation omitted).

> Ultimately, though, whether this prolonged detention is *excessive* and therefore punitive is a relative question. The duration of detention itself must be weighed against . . . the regulatory purposes for detention—preventing flight risk and protecting public safety. Whether the duration of detention is excessive depends in part on the degree of those risks and the extent to which [the petitioner's] detention mitigates them.

Doe v. Becerra II, 732 F. Supp. 3d at 1083 (emphasis in original); see also Torres, 995 F.3d at 708 ("The point at which detention constitutes a due process violation requires a case-by-case analysis.").

Petitioner's cumulative detention has reached eight months, which is prolonged. See Chen v. Aitken, 917 F. Supp. 2d 1013, 1018 (N.D. Cal. 2013) (holding Petitioner's seven-month detention under § 1225(b) was "prolonged" because it "has lasted well beyond the typical period described in Demore v. Kim, 538 U.S. 510 (2003)]" and "neither release nor removal are imminent"). But while prolonged, the eight-month duration of Petitioner's detention, standing alone, does not violate substantive due process. See Torres, 995 F.3d at 699 (identifying the 21-months of pre-trial detention as "likely approaching the outer bounds of due process"). However, Petitioner has offered ample evidence that her duration is excessive in relation to its regulatory purpose, in that she does not pose a danger to the community and any flight risk she presents can be mitigated by alternatives to detention. The undersigned also finds that detention has become punitive, given the conditions of confinement and Petitioner's health concerns.

**ii. Government Contribution to Delay**

Relevant to this analysis is whether the government is responsible for "delays that have contributed to the duration of detention." Doe v. Becerra II, 732 F. Supp. 3d at 1083; see also United States v. Gelfuso, 838 F.2d 358, 359 (9th Cir. 1988) (the due process limit on the length of pretrial detention requires consideration of "the length of confinement in conjunction with the extent to which the prosecution bears responsibility for the delay that has ensued"). The record does not clearly show that the government is responsible for any delays contributing to Petitioner's lengthy detention. Petitioner suggests that the government delayed proceedings when they transferred Petitioner from Otay Mesa to California City just days before her scheduled hearing (ECF No. 14 at 3; see also ECF No 14-1 at 8.), but the record is not clear as to whether the transfer resulted in the scheduled hearing being vacated.

**iii. Evidence of Flight Risk and Danger**

Determining whether Petitioner's prolonged detention has become punitive requires consideration of the extent to which it serves its regulatory purposes of preventing flight and

danger to the community. "This inquiry requires evaluating the degree to which [Petitioner] poses a flight risk or danger, which in turn requires the Court to consider the evidence related to those risks." Doe v. Becerra II, 732 F. Supp. 3d at 1086.

No IJ has found - and the evidence does not suggest - that Petitioner poses a danger to society. Petitioner's only criminal history includes an arrest warrant for a non-violent crime in Mexico. ECF No. 9-4.

At the bond re-detention hearing on February 5, 2026, an IJ determined that Petitioner poses "an extreme risk of flight." ECF No. 9-2. The record does not contain the IJ's full decision or a transcript of the proceedings, so the undersigned is unable to assess the IJ's reasoning. Based on the limited information in the record, it appears that Petitioner would pose some risk of flight. Petitioner is the subject of an arrest warrant in Mexico dated July 25, 2024. ECF No. 9-4. She arrived in the United States around the same time the arrest warrant was issued and thereafter remained in the United States beyond the time permitted by her visa. ECF No. 9-3 at 3. The Mexican arrest warrant gives rise to a plausible motive to abscond, should Petitioner become subject to a final order of removal. Petitioner's flight risk is somewhat mitigated by her consistent court appearances and compliance with the terms of her prior release.

**iv. Alternatives to Detention**

Relevant to assessing flight risk is whether the government's interest could be protected through alternatives to detention that are less restrictive. Doe v. Becerra II, 732 F. Supp 3d at 1080.

To the extent Petitioner poses a cognizable risk of flight, there are routine and effective conditions that ICE could impose. ICE's Intensive Supervision Appearance Program (ISAP) offers alternatives to detention such as GPS tracking, a smartphone app, and reporting by telephone. See Doe v. Chestnut, 810 F. Supp. 3d at 1198, citing ICE, Alternatives to Detention, perma.cc/384H-HCLY. These alternatives to detention are specifically designed to mitigate flight, and ICE's own data show that the vast majority of participants comply with the programs' requirements. Id. Given Petitioner's compliance with prior conditions of release and evidence of the efficacy of ISAP program, the undersigned finds that the government's interest in ensuring

Petitioner's appearance can be protected through alternatives to detention.

**v. Conditions of Confinement**

Substantive due process also imposes outer bounds on the conditions of civil immigration detention. Doe v. Becerra II, 732 F. Supp. 3d at 1080; Jones v. Blanas, 393 F.3d 918, 932 (9th Cir. 2004) ("[W]hen a [civil] detainee is confined in conditions identical to, similar to, or more restrictive than, those in which his criminal counterparts are held, we presume that the detainee is being subjected to 'punishment.'").

Petitioner alleges inadequate healthcare and poor conditions in detention. While detained, Petitioner has not had consistent access to prescribed medication to treat chronic, painful conditions. ECF No. 14 at 3, 4. She claims that she was injured during transport and alleges that medical neglect caused the death of at least one fellow detainee. Id. at 13. Respondent has not refuted these claims, and medical neglect at the facility where Petitioner is detained has been documented. See Tigranyan v. Warden of California City Det., No. 1:25-CV-01554-DJC-SCR, 2026 WL 91765, at *6 (E.D. Cal. Jan. 13, 2026) (noting investigation and report by Disability Rights California finding that California City fails to provide necessary medical and mental health care and fails to meet other basic needs), report and recommendation adopted, No. 1:25-CV-01554-DJC-SCR, 2026 WL 130843 (E.D. Cal. Jan. 16, 2026). Petitioner's allegations of frigid temperatures and inadequate food, water, and bathroom facilities (ECF No. 1 at 9, 10) align with the findings of other judges. Conditions at California City have been described as "abysmal," with "frigid" temperatures and water that "tast[ed] like bleach or detergent." Kaur v. United States Dep't of Homeland Sec., 813 F. Supp. 3d 1167, 1172 (E.D. Cal. 2025). Conditions are "not only inherently harsh but also worse than the conditions […] in state prison. Doe v. Chestnut, 810 F. Supp. 3d at 1201 (citing Doe v. Beccera II, 732 F. Supp. 3d at 1089). Such "harsh" and "abysmal" conditions suggest that Petitioner's detention is punitive in nature.

**vi. Conclusion as to Substantive Due Process Analysis**

On balance, the undersigned finds that Petitioner has established that her detention is excessive in relation to its regulatory purpose**.** Petitioner – a widowed mother with minimal criminal history – has spent eight months confined in poor conditions with inadequate healthcare.

Any risk of flight can be mitigated by standard post-release monitoring. Accordingly, the undersigned finds that Petitioner's detention has become punitive and recommends that the petition be granted on Count One.[1]

## IV. Remedy

The undersigned next turns to the appropriate remedy:

> Federal habeas corpus practice, as reflected by the decisions of [the Supreme] Court, indicates that a court has broad discretion in conditioning a judgment granting habeas relief. Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters 'as law and justice require.'" Hilton v. Braunskill, 481 U.S. 770, 775 [] (1987). "[H]abeas corpus is, at its core, an equitable remedy." Schlup v. Delo, 513 U.S. 298, 319[] (1995). "Moreover, in constitutional adjudication as elsewhere, equitable remedies are a special blend of what is necessary, what is fair, and what is workable." Lemon v. Kurtzman, 411 U.S. 192, 200 [] (1973) (footnote omitted).

Doe v. Chestnut, 810 F. Supp. 3d at 1202. The undersigned finds that appropriate remedy for this violation of substantive due process is release, but with safeguards to mitigate flight risk. See id. (ordering release with "appropriate conditions so that the government's significant interests in ensuring Petitioner's appearance at future proceedings, protecting the community, and that, if ordered removed, Petitioner will be successfully removed, are protected."); Zadvydas, 533 U.S. at 700 ("[T]he [noncitizen]'s release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the [noncitizen] may no doubt be returned to custody upon a violation of those conditions.").

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's petition for writ of habeas corpus be GRANTED on Count 1 (substantive due process) as follows:
    a. Respondent shall IMMEDIATELY RELEASE Petitioner Maria de Jesus Rivera Ramirez (A# 221-421-676) from custody. At the time of release, Respondent must return all of Petitioner's documents and possessions.
    b. Respondent shall enroll Petitioner in ICE's Intensive Supervision Appearance

[1] In the interest of judicial economy, the undersigned does not address Petitioner's second claim that her re-detention constitutes a procedural due process violation.

Program (ISAP) and impose its standard flight-mitigation conditions

2. The Clerk be directed to:

    a. Serve the **California City Detention Center** with a copy of this Order; and

    b. Enter judgment in Petitioner's favor and close the case.

3. Any order adopting these findings and recommendations include language that it does not address the circumstances in which Respondents may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal and Petitioner receives notice of the order.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 10, 2026



SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE